## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARC BOSHNACK, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>WIDOW JANE DISTILLERIES LLC,<br><br>        Defendant. | Case No: 1:19-CV-08812-LTS |

### DEFENDANT WIDOW JANE DISTILLERIES LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

### [ORAL ARGUMENT REQUESTED]

J. Noah Hagey
Matthew Borden *(pro hac vice forthcoming)*
David H. Kwasniewski *(pro hac vice forthcoming)*
BRAUNHAGEY & BORDEN LLP
7 Times Square, 27th Floor
New York, NY 10036
Tel. & Fax: (646) 829-9403
hagey@braunhagey.com
borden@braunhagey.com
kwasniewski@braunhagey.com
*Attorneys for Defendant Widow Jane Distilleries LLC*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

    A.    Widow Jane Distills and Bottles Bourbon ................................................. 4

    B.    Widow Jane's Labels Comply with All Applicable Regulations ........................... 4

    C.    Plaintiff's Claims ................................................................................. 6

    D.    Widow Jane's Efforts to Avoid Bringing this Motion ........................................... 6

LEGAL STANDARD.......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

I.    ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE
WIDOW JANE'S LABELS ARE NOT MATERIALLY MISLEADING ....................... 8

    A.    Plaintiff's Claim that He Was Misled into Believing that the Bourbon He
Supposedly Bought Was Distilled in New York Is Implausible............................ 8

        1.    The Label Plaintiff Claims to Have Relied on States that the Bourbon Was
Distilled Outside New York........................................................................ 9

        2.    The Language Plaintiff Supposedly Relied on Does Not State that the
Bourbon Was Distilled in New York........................................................ 10

    B.    Plaintiff's Source-of-Proofing Water Theory Fails ............................................ 11

II.    PLAINTIFF'S CLAIMS ALSO SUFFER FROM NUMEROUS
INDIVIDUAL FLAWS THAT SEPARATELY AND
INDEPENDENTLY REQUIRE DISMISSAL ................................................. 12

A.    Plaintiff's GBL Claims (Counts I and II) are Barred by the Safe Harbor Doctrine ................................................................................................................ 12

B.    Plaintiff's Unjust Enrichment Claim (Count III) is Duplicative........................... 14

C.    Plaintiff Fails to Plead the Existence of any Warranty or Timely Notice (Count IV) ...................................................................................................................... 15

D.    Plaintiff Fails to Allege Fraudulent Intent (Count V) ........................................... 16

III.   PLAINTIFF LACKS STANDING .................................................................................. 17

IV.    PLAINTIFF'S CLAIMS ARE MOOT ........................................................................... 18

V.     LEAVE TO AMEND SHOULD BE DENIED ............................................................... 18

CONCLUSION.............................................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*Albert v. Blue Diamond Growers*,
   151 F. Supp. 3d 412 (S.D.N.Y. 2015)........................................................................ 8

*Am. Home Prods. Corp. v. Johnson & Johnson*,
   672 F. Supp. 135 (S.D.N.Y. 1987) ................................................................ 12, 13

*Ashcroft v. Iqbal*,
   556 U.S 662 (2009)........................................................................................... 7

*Baker v. Robert I. Lappin Charitable Found.*,
   415 F. Supp. 2d 473 (S.D.N.Y. 2006).................................................................. 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................... 7

*Boring v. Sapporo USA, Inc.*,
   234 F. Supp. 3d 386 (E.D.N.Y. 2017) ........................................................... 9, 14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
   433 F.3d 181 (2d Cir. 2005).............................................................................. 7

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983).......................................................................................... 18

*Cruz v. Anheuser-Busch, LLC*,
   No. CV 14-09670 AB (ASx), 2015 WL 3561536 (C.D. Cal. June 3, 2015) ........... 13

*Dash v. Seagate Tech. (U.S.) Holdings Inc.*,
   27 F. Supp. 3d 357 (E.D.N.Y. 2014) ...................................................... 7, 16, 17

*Davis v. FEC*,
   554 U.S. 724 (2008)......................................................................................... 8

*Deshawn E. by Charlotte E. v. Safir*,
   156 F.3d 340 (2d Cir. 1998).............................................................................. 18

*Dumas v. Diageo, PLC*,
   Case No. 15cv1681 BTM(BLM) 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) ........ 9

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)............................................................................... 8

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014) .................................................................... 15

*Hidalgo v. v. Johnson & Johnson Consumer Companies, Inc.*,
   148 F. Supp. 3d ............................................................................................. 18

*Ibarrola v. Kind, LLC*,
   83 F. Supp. 3d 751 (N.D. Ill. 2015) .................................................................... 8

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
   MDL No. 09-2064-NMG, 2014 WL 866571 (D. Mass. Mar. 5, 2016)............... 12, 14

*In re Scotts EZ Seed Litig.*,
   No. 12 CV 4727(VB), 2013 WL 2303727 (S.D.N.Y. May 22, 2013)..................... 15

*In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*,
   167 F. Supp. 3d 524 (S.D.N.Y. 2016).................................................................. 18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................ 8

*Marcus v. AT&T Corp.*,
  938 F. Supp. 1158 (S.D.N.Y. 1996)..................................................................... 12
*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007)................................................................................ 19
*McKinnis v. Kellogg USA*,
  No. CV o7-2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ....................... 11
*Nakahata v. N.Y.–Presbyterian Healthcare Sys., Inc.*,
  723 F.3d 192 (2d Cir. 2013).................................................................................. 16
*New York City Employees' Ret. Sys. v. Dole Food Co.*,
  969 F.2d 1430 (2d Cir. 1992).............................................................................. 18
*O'Hara v. Diageo-Guinness, USA, Inc.*,
  306 F. Supp. 3d 441 (D. Mass. 2018) ................................................................. 13
*O'Shea v. Littleton*,
  414 U.S. 488 (1974)............................................................................................ 18
*Parent v. MillerCoors LLC*,
  No. 3:15-cv-1204-GCP-WVG, 2015 WL 6455752 (S.D. Cal. Oct. 26, 2015)........................ 13
*Paulino v. Conopco, Inc.*,
  No. 14-CV-5145 JG RML, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .................. 14, 15
*Pernod Ricard USA, LLC v. Barcardi USA, Inc.*,
  653 F.3d 241 (3d Cir. 2011).................................................................................. 9
*Poindexter v. EMI Record Grp., Inc.*,
  No. 11 Civ. 559 (LTS) (JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ..................... 7
*Quinn v. Walgreen Co.*,
  958 F. Supp. 2d 533 (S.D.N.Y. 2013)................................................................. 16
*Romero v. Flowers Bakeries, LLC*,
  No. 14-cv-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) .......................... 10
*Scheiner v. Wallace*,
  832 F. Supp. 687 (S.D.N.Y. 1993) ...................................................................... 16
*Silva v. Smucker Nat. Foods, Inc.*,
  No. 14-CV-6154 JG RML, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .................... 14
*Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS/TWD),
  2016 WL 40695 (N.D.N.Y. Jan. 12, 2016).................................................. 7, 13, 16
*Sitt v. Nature's Bounty, Inc.*,
  No. 15-CV-4199 (MKB), 2016 WL 5372794 (E.D.N.Y. Sept. 28, 2016)........................ 14
*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008).................................................................................. 7
*Taylor Wine Co. v. Dep't of Treasury*,
  509 F. Supp. 792 (D.D.C. 1981) ................................................................. 4, 6, 7
*Teixera v. St. Judge S.C., Inc.*,
  193 F. Supp. 3d 218 (W.D.N.Y. 2016)............................................................... 15
*Terra Secs. Asa Konkursbo v. Citigroup, Inc.*,
  740 F. Supp. 2d 441 (S.D.N.Y. 2010)................................................................ 11
*Tyman v. Pfizer*, 16-CV-6941,
  2017 WL 6988936 (E.D.N.Y. Dec. 27, 2017) .................................................... 10
*U.S. ex rel. Grupp v. DHL Express (USA), Inc.*,
  47 F. Supp. 3d 171 (W.D.N.Y. 2014) ........................................................... 16, 17

*W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP,*
    5 F.3d 100 (2d Cir. 2008)................................................................................. 17
*Werbel v. Pepsico, Inc.*, No. C,
    09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010).................................................. 10

## **STATUTES**

6 U.S.C. § 531(d) ................................................................................................... 5
27 U.S.C. § 205 ...................................................................................................... 4
27 U.S.C. § 205(e) .................................................................................................. 5
GBL §§ 349(d) and 350-d ...................................................................................... 12
N.Y. U.C.C. Law § 2-313(a) .................................................................................. 15
New York General Business Law Sections 349 and 350 ................................ 6, 14, 15
Section 350-d ......................................................................................................... 12

## **REGULATIONS**

27 C.F.R. § 5.31(a) ................................................................................................. 5
27 C.F.R. § 5.36(a) ........................................................................................... 2, 5, 14
27 C.F.R. § 5.36(d) ........................................................................................... 2, 5, 13
27 C.F.R. §§ 5.4, 13.2 ............................................................................................. 5

Defendant Widow Jane Distilleries LLC ("Widow Jane") respectfully submits this Memorandum of Law in support of its motion to dismiss.

## INTRODUCTION

Defendant Widow Jane is a craft whiskey distillery based in Brooklyn, New York and one of the few active distilleries in the State.  The Complaint is a recycled pleading used by Plaintiff's lawyer to obtain private settlements from numerous whiskey companies.  In this case, a purportedly aggrieved bourbon drinker alleges he would not have purchased Widow Jane's sublime whiskey if he had known it contained alcohol sourced from outside the State.[1]  This is impossible.  As shown in the label included on page 5 of the Complaint, the label Plaintiff supposedly read and relied on expressly disclosed that the bourbon was sourced from "KY, TN, IN" and "bottled by" Widow Jane in Brooklyn:



---

[1]  Because whisky takes years to mature in one or more casks, and Widow Jane only has been in existence for less than a decade, it casks and matures whiskies made by other distilleries, a fact explicitly disclosed on each and every Widow Jane bottle.

1

(Compl. ¶¶ 3, 10.)  In fact, such disclosure is expressly mandated by federal law pursuant to 27

C.F.R. § 5.36(d) and has been approved by the Alcohol and Tobacco Tax and Trade Bureau

("TTB").

Next, Plaintiff contends that he also was deceived by the product's reference to its use of

water from the "Widow Jane Mine - Rosendale, NY."  But this disclosure not only is 100%

accurate, but is mandated by federal TTB law.  The water in question, from an approved pure

source adjacent to the Widow Jane Mine in Rosendale, New York, is used for "proofing" Widow

Jane's bourbon.  This is a process that allows Widow Jane to maintain a stable quality and

quantum of alcohol in each bottle.  Not surprisingly, federal law also requires Widow Jane to

identify itself as the bottler, and state its location, on every bottle.  27 C.F.R. § 5.36(a)(1), (2).

In short, the very disclosure which Plaintiff attacks has been reviewed and approved by

the federal agency charged with regulating the sale and labeling of alcohol products.  Even

though this was explained to him, Plaintiff nonetheless has refused to dismiss this case in hopes

of extracting a nuisance payment.  Such conduct is a misuse of the legal system, and the

Complaint should be dismissed for at least the following reasons:

*First,* as noted above, Plaintiff cannot plausibly allege he was misled about the source of

Widow Jane's distillate because none of the labels depicted in the complaint claim that Widow

Jane's bourbon is distilled in New York.  To the contrary, the labels depicted in the Complaint, at

Paragraph 3 and 10, all state that the bourbon is from Kentucky, Tennessee, or Indiana.  Further,

Plaintiff has conceded that the source of proofing water is "meaningless and inconsequential"

(Compl. ¶ 6), and thus any representation about it could not have been material to his purchasing

decision.  At all relevant times, Widow Jane did source its proofing water from the Rosendale

Mine complex, of which the Widow Jane mine is a part – just not from the Widow Jane mine

entrance itself, since that mine is open to the public and using the water flowing through it would be unsanitary.

*Second,* Plaintiff's claims arising under New York's General Business Law are barred by the safe harbor doctrine because Widow Jane's labels were approved by the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), pursuant to its statutory authority to regulate the labeling of all whiskey sold in the United States – and in particular, how those labels describe the location of the distillation and bottling.

*Third,* Plaintiff's unjust enrichment claim is purely duplicative of his other claims and should be dismissed.

*Fourth***,** Plaintiff's warranty claim fails because Plaintiff fails to allege the existence of any warranty or that he gave timely notice of his claims prior to filing suit.

*Fifth,* Plaintiff's fraud claim fails because Plaintiff does not allege that any of the statements on Widow Jane's labels were made with any fraudulent intent.

*Sixth*, Plaintiff lacks standing to sue Widow Jane for statements made by third party websites, since Widow Jane does not control what those third parties say and Plaintiff did not rely on any third party statements in any event.  Plaintiff likewise lacks standing to seek injunctive relief because Widow Jane's labels changed years ago and Plaintiff's lawyers have admitted the current labels are not misleading.

*Seventh,* Plaintiff's claims are also moot.  Widow Jane's labels were never misleading; and they are admittedly not misleadingly now, as Plaintiff acknowledges in the complaint and his lawyers have conceded.

Pursuant to this Court's Rules, Widow Jane met and conferred with Plaintiff, but he declined to change anything in his pleading and claimed that the images in the complaint are not

3

of the actual product he allegedly purchased but were the same ones he supposedly relied on. Accordingly, Plaintiff cannot state a claim, and his claims should be dismissed with prejudice.

## BACKGROUND

### A.    Widow Jane Distills and Bottles Bourbon

Founded in 2012, Widow Jane is one of the only distilleries producing bourbon and rye whiskey onsite in Brooklyn, New York.

Because it takes years, and even decades, to make bourbon, like many other young craft distilleries, in addition to selling the whiskey it distills onsite, Widow Jane also bottles and sells whiskey distilled in other states, including Kentucky, Indiana, and Tennessee.  These out-of-state whiskeys are carefully selected by Widow Jane, blended at Widow Jane's facilities in Brooklyn, and proofed onsite as well.  To proof its whiskeys, Widow Jane uses limestone-filtered water specifically sourced from the Rosendale Mine complex in upstate New York, which Widow Jane believes imparts a "hard yet sweet" flavor to the finished product.  Since 2010, Widow Jane's whiskeys have won numerous awards and accolades and are now sold throughout North America and Europe.

### B.    Widow Jane's Labels Comply with All Applicable Regulations

Widow Jane employs the same degree of care in making its whiskey as it does in labeling its whiskey, because alcohol labels are one of the most closely regulated labels on any consumer good.  The Twenty-First Amendment to the Constitution grants the Federal Government broad authority to regulate the sale and distribution of alcohol.  Congress has exercised this authority with the Federal Alcohol Administration Act ("FAAA"), which charges the Secretary of the Treasury with ensuring that alcoholic beverage labels do not contain statements that may deceive consumers.  27 U.S.C. § 205; *Taylor Wine Co. v. Dep't of Treasury*, 509 F. Supp. 792, 794 (D.D.C. 1981) ("The FAAA gives the [Treasury Department] broad discretion to fashion a

regulatory scheme designed to preclude deception.").  To prevent the sale of distilled spirits with potentially deceptive labels, Congress requires that companies obtain "a certificate of label approval covering the distilled spirit[]" as prescribed by the Secretary of Treasury's regulations. 27 U.S.C. § 205(e).

This regulatory and label approval authority has been delegated to the TTB. 6 U.S.C. § 531(d); Treas. Order 120-01 (Dec. 10, 2013).  TTB officers are tasked with reviewing distilled spirit labels to ensure that, among other things, bourbon labels do not contain any statements that would deceive consumers about the state in which the bourbon was produced.  *See* 27 C.F.R. §§ 5.4, 13.2 (delegating the regulatory authority of the TTB Administrator to the appropriate TTB officers).  As such, bourbon cannot be bottled or removed from a plant unless the company has a valid "certificate of label approval" ("COLA") issued by a TTB officer.  27 U.S.C. § 205(e); 27 C.F.R. § 5.31(a) (requiring that all distilled spirits be "marked, branded, labeled, or packaged in conformity with [the labeling regulations]").

The TTB has promulgated detailed regulations governing statements about the source of distillates.  For instance, the TTB requires all distilled spirits to state "the name (or trade name) of the bottler and the place such distilled spirits are bottled," unless the bottler is also the distiller of the spirit.  27 C.F.R. § 5.36(a)(1), (2).  The TTB also requires that, if a whiskey is distilled in one state and bottled in another, "the State of distillation shall be shown on the label . . . ."  27 C.F.R. § 5.36(d).

Widow Jane complies with these requirements by including on all its labels a statement that the whiskey was bottled or distilled by Widow Jane and, where the whiskey is not distilled by Widow Jane, the state of distillation.  Each of the Widow Jane bourbon labels identified in the complaint were specifically approved by the TTB.  (RJN Exs. 1, 2.)

5

### C.      Plaintiff's Claims

Plaintiff's lawyers have recently begun iteratively suing whiskey companies based on claims about their bottles' labels.  This includes a lawsuit recently filed before Judge Louis L. Stanton, in which Plaintiff's lawyers claimed that using the number "8" on a whiskey label was misleading.  *See Parker v. Buffalo Trace Distillery, Inc.*, Case 1:16-cv-08986-LLS.

In this case, Plaintiff alleges that he purchased some unidentified bottle of Widow Jane bourbon "in or about January 2018" from a Manhattan wine store for $85.  (Compl. ¶ 26.) Plaintiff allegedly "read the Widow Jane bottle's labeling, including the representation that it contained 'pure limestone mineral water from the Widow Jane Mine – Rosendale, NY.'"  (*Id.*) Based on this, Plaintiff claims to have believed "that Widow Jane bourbon was distilled in Brooklyn from limestone water from the Widow Jane Mine in Rosendale, NY."  (*Id.* ¶ 13.). Plaintiff also asserts that various third-party websites that he did not rely on, such as totalwines.com, BottleKing.com, and AstorWines.com, represent that all Widow Jane bourbons are from New York.  (Compl. ¶¶ 17-19.)

Based on these facts, Plaintiff asserts five claims: for breach of New York General Business Law Sections 349 and 350, for unjust enrichment, for breach of warranty, and for fraud. (Compl. ¶¶ 38-68.)  Plaintiff seeks "damages" and "injunctive relief."  (Compl., Prayer.)

### D.      Widow Jane's Efforts to Avoid Bringing this Motion

On September 27, 2019, counsel for the parties spoke, and Widow Jane identified the infirmities in the Complaint discussed below and asked Plaintiff to dismiss the claims.  On December 10, 2019, Widow Jane sent Plaintiff a detailed meet-and-confer letter again identifying the defects in the Complaint.  (Declaration of Matthew Borden, Ex. A.)  On December 13, 2019, the parties met on conferred via telephone.  (*Id.* ¶ 4.)  On the call, Plaintiff refused to amend any of the allegations in the complaint.  (*Id.*)  His lawyers affirmed that the

images in the pleading were not of the product Plaintiff allegedly bought, which they said was no longer available. (*Id.*) They claimed, however, that the images they put in the pleading exactly reflected the label that Plaintiff claims to have seen and relied on in deciding to buy the product. (*Id.*)

## LEGAL STANDARD

Widow Jane seeks dismissal pursuant to Rule 12(b)(6) and 12(b)(2). Under Rule 12(b)(6), a claim must be dismissed unless the complaint pleads enough facts to "'state a claim to relief that is plausible on its face.'" *Poindexter v. EMI Record Grp., Inc.*, No. 11 Civ. 559 (LTS) (JLC), 2012 WL 1027639 *2 (S.D.N.Y. Mar. 27, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court assumes the truth of factual allegations, "[t]hreadbare recitals of the elements of a cause of action," "conclusory statements," and "legal conclusions" are not entitled to an assumption of truth. *Id.* at 663. "A complaint that 'tenders naked assertions' devoid of 'further factual enhancement'" fails and must be dismissed. *Dash v. Seagate Tech. (U.S.) Holdings Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Dismissal also is appropriate "when a defendant raises . . . . [a statutory bar] as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS/TWD), 2016 WL 40695 *3 (N.D.N.Y. Jan. 12, 2016) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)).

The Complaint also is infirm under Rule 12(b)(1) because plaintiff lacks Article III standing and thus the Court "has no subject matter jurisdiction to hear [his] claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181,

7

197 (2d Cir. 2005).  A plaintiff bears the burden of establishing standing by showing (1) he has

suffered a concrete injury in fact (2) that is fairly traceable to a defendant's challenged conduct

and (3) will likely be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560, 560–61 (1992).  A plaintiff must demonstrate standing for each claim and each form of

relief sought.  *Davis v. FEC*, 554 U.S. 724, 734 (2008), and should be dismissed under 12(b)(1)

as to each cause of action for which standing is absent.  *Albert v. Blue Diamond Growers*, 151 F.

Supp. 3d 412, 417–18 (S.D.N.Y. 2015).

## ARGUMENT

## I.   ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE WIDOW JANE'S LABELS ARE NOT MATERIALLY MISLEADING

All of Plaintiff's claims are premised on his theories that Widow Jane misled him about

the source of its distillate and the source of its proofing water.  (Compl. ¶¶ 43, 50, 56, 60, 65.)

Where a plaintiff has not adequately pled a material misrepresentation, the complaint should be

dismissed.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("[A] court may

determine as a matter of law that an allegedly deceptive advertisement would not have misled a

reasonable consumer.").  A plaintiff fails to state a claim by offering the interpretations of

product labeling that are not supported by the affirmative statements on the label at the time of

purchase.  *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 759 (N.D. Ill. 2015) ("The Court must

view the allegedly misleading statement in light of information available . . . at the time

of . . . purchase.").

### A.   Plaintiff's Claim that He Was Misled into Believing that the Bourbon He Supposedly Bought Was Distilled in New York Is Implausible

Plaintiff's claim that he was misled as to where the bourbon he allegedly purchased is

implausible for at least two reasons.  First, the labels he claims to have reviewed state that the

bourbon was distilled outside New York.  Second, the statement that supposedly caused him buy the product, i.e., that it was made from "'pure limestone mineral water from the Widow Jane Mine – Rosendale, NY'" (Compl. ¶ 26), says nothing about where the whiskey is distilled.

### 1.    The Label Plaintiff Claims to Have Relied on States that the Bourbon Was Distilled Outside New York

Plaintiff's theory that he was misled about where the bourbon he supposedly bought was distilled fails because plaintiff could not have reasonably believed that the whiskey he purchased was distilled in New York.  Each of the labels depicted in the Complaint, and on which Plaintiff claims he relied, all clearly state that the bourbon is distilled elsewhere. For instance, the label in Paragraph 3 of the Complaint states that the whiskey is "Kentucky Bourbon Whiskey." Likewise, the label depicted in Paragraph 10 of the Complaint states "KY, IN, TN Bourbon Bottled by Widow Jane Distillery Brooklyn, NY."

Simply put, Widow Jane does not claim to distill all of its bourbon in New York. Plaintiff cannot create a claim by ignoring the plain statements on the labels to this effect. Courts have repeatedly held that truthful labels on alcoholic beverages cannot be deceptive. *Pernod Ricard USA, LLC v. Barcardi USA, Inc.*, 653 F.3d 241, 253 (3d Cir. 2011) (dismissing claims because print on back label of bottle disclosed that product was made in Puerto Rico); *Boring v. Sapporo USA, Inc.*, 234 F. Supp. 3d 386, 391-92 (E.D.N.Y. 2017) (dismissing claims because alleged deceptions "are eclipsed by the accurate disclosure statement" on the "side or back of cans"); *Dumas v. Diageo, PLC*, Case No. 15cv1681 BTM(BLM) 2016 WL 1367511 *4 (S.D. Cal. Apr. 6, 2016) (dismissing false designation of origin claims because production location stated on bottom of box).

Nor can Plaintiff plausibly claim to have been misled by the supposed "claims of major retailers," or the statements of New York State Senator Chuck Schumer (or those of any other

politician), which allegedly imply that all (instead of just some) of Widow Jane bourbon is distilled in New York.  (Compl. ¶¶ 14, 17-19.) Nowhere in the Complaint does Plaintiff allege that he ever saw or heard these alleged statements, much less that he relied on them to make his purchasing decision.  To the contrary, Plaintiff alleges that he only relied on the label.  (Compl. ¶ 26.)  These statements thus cannot have plausibly misled the Plaintiff.  *See Tyman v. Pfizer*, 16-CV-6941, 2017 WL 6988936 *24 (E.D.N.Y. Dec. 27, 2017) (claims relating to advertising in other media dismissed when plaintiffs allegedly relied only on product labels).

> **2.    The Language Plaintiff Supposedly Relied on Does Not State that the Bourbon Was Distilled in New York**

Notwithstanding the clear and accurate language of the labels, Plaintiff alleges that the statement "Pure Limestone Mineral Water from the Widow Jane Mine – Rosendale, NY" led him to believe the bourbon is "distilled in Brooklyn from limestone water." (Compl. ¶ 13.)  Such a claim is nonsensical:  distilling water can only produce distilled water.  Bourbon, like all whiskeys, is distilled from a mash, essentially a beer made by extracting and fermenting sugars from other grains.  Moreover, as discussed in Section B below, Plaintiff – a whiskey sophisticate – clearly understood that the water referenced on the label was used for proofing, not distillation. And even if the Plaintiff believe the water described on the label was for use in distillation, that he still could not plausibly believe that the distillation occurred in New York, since the labels clearly state otherwise.

Courts routinely dismiss similar claims based solely on a plaintiff's self-serving allegation that a label says something it does not actually say.  *See, e.g. Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 WL 469370 *6–7 (N.D. Cal. Feb. 8, 2016) (label claim that product included "wholesome wheat" did not misleadingly convey that the product was made with whole wheat); *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860,

at *3–5 (N.D. Cal. July 2, 2010) ("Crunch Berries" cereal did not misleading represent it was made with real berries); *McKinnis v. Kellogg USA*, No. CV o7-2611 ABC (RCx), 2007 WL 4766060 *4–5 (C.D. Cal. Sept. 19, 2007) ("Froot Loops" did not mislead plaintiff into believing it was made with real fruit). Plaintiff's nonsensical reading of the labels in this case fares no better and cannot support any of his claims.

   **B.**  **Plaintiff's Source-of-Proofing Water Theory Fails**

   Plaintiff's second theory, that Widow Jane misled him about the source of its proofing water, is similarly unavailing. Plaintiff does not allege that the mine entrance the water was taken from was material (and as noted above, using the Widow Jane entrance would have yielded a less sanitary version of the same water). Further, Plaintiff, apparently an experienced whiskey drinker, devotes several paragraphs of his complaint to explaining why "limestone water has unique properties which makes it ideal for distillation, but that it "adds no benefit when it is simply added to the bourbon after distillation . . . ." (Compl. ¶ 6.) "Indeed," Plaintiff goes on, "[t]he simple addition of limestone water to Widow Jane after it has already been distilled in Kentucky is meaningless and inconsequential." (*Id.* ¶ 7.)

   Plaintiff thus concedes that any representations regarding the source or quality of Widow Jane's proofing water was "meaningless and inconsequential" to him, and hence immaterial to his purchasing decision. A representation is only actionable if its is material to the plaintiff. *See Terra Secs. Asa Konkursbo v. Citigroup, Inc.*, 740 F. Supp. 2d 441, 448 (S.D.N.Y. 2010) ("New York law requires that plaintiffs alleging common law fraud establish reasonable reliance on a material representation" and that materiality is evaluated in light of "the sophistication of the parties"). Plaintiff, who clearly fashions himself a sophisticated whiskey consumer, cannot

plausibly claim to have been misled by Widow Jane's claims about the source of its proofing

water when he already believes any such claim to be "meaningless and inconsequential."

## II.    PLAINTIFF'S CLAIMS ALSO SUFFER FROM NUMEROUS INDIVIDUAL FLAWS THAT SEPARATELY AND INDEPENDENTLY REQUIRE DISMISSAL

Each of Plaintiff's claims is also individually defective: his GBL claims are barred by the

safe harbor doctrine; his unjust enrichment claim is duplicative; he fails to allege the existence of

any warranty on which he relied or that he provided notice, as required; and he fails to allege that

Widow Jane acted with any fraudulent intent.  These are separate and independent reasons for

dismissing each of these claims.

### A.    Plaintiff's GBL Claims (Counts I and II) are Barred by the Safe Harbor Doctrine

Plaintiff's labels were approved by the TTB and comply with all TTB regulations

regarding identification of the source of the whiskey.  Such compliance with federal regulations

"is a complete defense" to a false advertising claim.  *Am. Home Prods. Corp. v. Johnson &*

*Johnson*, 672 F. Supp. 135, 144 (S.D.N.Y. 1987).

The rationale for this safe harbor "is the need for uniformity in the regulation of

advertising and labeling and a deference to the expertise of the responsible regulatory agency."

*Id.*; *see also In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2064-NMG,

2014 WL 866571 *4 (D. Mass. Mar. 5, 2016) ("[T]he safe harbor provision, in essence, reflects a

judgment . . . that . . . unfair competition law should not be employed to second guess legislative

judgments."). New York has codified this "safe harbor" in GBL §§ 349(d) and 350-d.[2]  New

York's safe harbor follows the safe harbors recognized in many other jurisdictions, either

---

[2] Although Section 350-d references the FTC, "Courts have construed § 350-d to be congruent with § 349(d) and also to cover regulations promulgated by agencies other than the FTC." *Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1173 (S.D.N.Y. 1996).

codified in statutes, adopted by via the Uniform Deceptive Trade Practices Act, or applied under the common law. *Am. Home Prods.*, 672 F. Supp. at 144.

The safe harbor applies "where a federal law or regulation specifically authorizes the challenged conduct, or a federal agency specifically approves the challenged conduct." *Singleton*, 2016 WL 406295 *7. For alcoholic beverage labels, the safe harbor applies where a plaintiff attacks a part of the TTB-approved label that is specifically covered by the TTB's regulations. *See O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 465 (D. Mass. 2018) (safe harbor barred false designation of origin claim based on phrase "St. James Gate, Dublin," on the front of Guinness beer bottles, when the location of brewing – Canada – was accurately disclosed on the back of the bottles in accordance with TTB regulations); *Cruz v. Anheuser-Busch, LLC*, No. CV 14-09670 AB (ASx), 2015 WL 3561536 *3–6 (C.D. Cal. June 3, 2015) (where TTB issued guidance for calorie and carbohydrate content on labels, safe harbor barred claim that term "light" misleadingly implied beer was low in calories or carbohydrates); *Parent v. MillerCoors LLC*, No. 3:15-cv-1204-GCP-WVG, 2015 WL 6455752 *5–7 (S.D. Cal. Oct. 26, 2015) (because TTB regulated what brewer name companies may put on beer labels, safe harbor bars claims that MillerCoors misleadingly used named "Blue Moon Brewing Company" on labels). In short, a plaintiff's claims are barred by the safe harbor where the challenged conduct "is the same as the conduct authorized by law." *Id.* *6.

Here, the TTB's express regulatory approval of Widow Jane's labels bars Plaintiff's claims because the TTB authorized the use of the very same statements which Plaintiff asserts are misleading. In particular, Widow Jane identified the source of its distillate precisely as TTB regulations require. *See* 27 C.F.R. § 5.36(d). Moreover, to the extent the Complaint implies that it was misleading for Widow Jane to identify itself as the bottler of the whisky (*see* Compl.

13

¶ 10), such a statement is affirmatively required by the TTB. 27 C.F.R. § 5.36(a)(1).

Accordingly, Plaintiff's GBL claims are barred by the safe harbor.  *See In re Celexa*, 2014 WL

866571 *4 (finding safe harbor applies where Congress entrusts an agency to determine whether

a proposed label is false or misleading).

### B.   Plaintiff's Unjust Enrichment Claim (Count III) is Duplicative

Plaintiff's claim for unjust enrichment fails because it is duplicative of his other claims.

Under New York law, "an unjust enrichment claim is available 'only in unusual situations when,

though the defendant has not breached a contract nor committed a recognized tort, circumstances

create an equitable obligation running from the defendant to the plaintiff.'"  *Paulino v. Conopco,

Inc.*, No. 14-CV-5145 JG RML, 2015 WL 4895234 *3 (E.D.N.Y. Aug. 17, 2015) (citation

omitted)).  "It is not a 'catchall cause of action to be used when others fail.'"  *Id.* (citation

omitted).  Thus, an "unjust enrichment claim that merely, 'duplicates, or replaces, a conventional

contract or tort claim' is insufficient."  *Id.* (citation omitted).

This is not such an unusual situation.  Rather, Plaintiff is attempting to use his unjust

enrichment claim as a catchall cause of action in the event his duplicative claims fail.  For

instance, Plaintiff bases this claim on the same statement that forms the basis for all his other

claims.  Where, as here, an unjust enrichment claim is based on the same allegations as other

claims, the claim should be dismissed as duplicative.  *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-

4199 (MKB), 2016 WL 5372794 *18 (E.D.N.Y. Sept. 28, 2016) (dismissing claim as duplicative

where "Plaintiff's unjust enrichment claims under New York law are based on the same

allegations as her claims of violations of GBL sections 349 and 350"); *Bowring*, 2017 WL

902151, at *5 ("Because this [unjust enrichment] claim is duplicative, it is dismissed"); *Silva v.

Smucker Nat. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *12 (E.D.N.Y. Sept.

14, 2015) (dismissing unjust enrichment claim as duplicative of other claims, including GBL §§ 349 and 350); *Paulino*, 2015 WL 4895234, at *3 (noting various "decisions involving the deceptive labeling of consumer goods have dismissed unjust enrichment claims as duplicative or otherwise unavailable at the motion to dismiss stage."). Accordingly, Plaintiff's unjust enrichment claim should be dismissed.

### C.   Plaintiff Fails to Plead the Existence of any Warranty or Timely Notice (Count IV)

To state a claim for breach of express warranty under New York law, Plaintiff must allege "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty, and (4) injury to the buyer caused by the breach." *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (internal citation omitted). To constitute a warranty, the statement must be an "affirmation of fact" or express "promise" upon which the buyer relies. *In re Scotts EZ Seed Litig.*, No. 12 CV 4727(VB), 2013 WL 2303727 *6 (S.D.N.Y. May 22, 2013) (citing N.Y. U.C.C. Law § 2-313(a)); *Teixera v. St. Judge S.C., Inc.*, 193 F. Supp. 3d 218, 224 (W.D.N.Y. 2016).

Here, Plaintiff does not identify any affirmation of fact or express promise that Widow Jane Bourbons are all distilled in New York. As detailed above, all of the labels depicted in the Complaint clearly state that the whiskey is distilled in another state, as TTB regulations require. A plaintiff cannot plead a warranty claim by contorting a label's statements into a fact or promise that the defendants did not state or provide. *See Baker v. Robert I. Lappin Charitable Found.*, 415 F. Supp. 2d 473, 489–90 (S.D.N.Y. 2006) (taking statements out of context could not turn them into an express warranty). Similarly, Plaintiff had not identified any warranty on which he relied about the source of Widow Jane's proofing water since the source of proofing water is "meaningless and inconsequential" to him.

Additionally, Plaintiff's claim fails because he does not plead he provided timely notice of the alleged breach of warranty.  "Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *Singleton*, 2016 WL 406295 *12. The express warranty claim should be dismissed because Plaintiff does not allege that he provided any notice, let alone notice within a reasonable time.  *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) ("Here, plaintiffs have failed to allege they provided Walgreens with timely notice of the alleged breach of warranty. Accordingly, plaintiffs' breach of warranty claims are dismissed.").

### D.      Plaintiff Fails to Allege Fraudulent Intent (Count V)

Along with failing to plead a material misrepresentation, Plaintiff's fraud claim fails because he does not plead, among other things, "'facts that give rise to a strong inference of fraudulent intent.'"  *Dash*, 27 F. Supp. 3d at 362 (quoting *Nakahata v. N.Y.–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013)).  Facts that are consistent both with fraudulent intent and the absence of such intent are insufficient to plead fraud. "Plaintiff[] must allege facts that unambiguously give rise to a strong inference of fraudulent intent."  *U.S. ex rel. Grupp v. DHL Express (USA), Inc.*, 47 F. Supp. 3d 171, 177 (W.D.N.Y. 2014) (quoting *Scheiner v. Wallace*, 832 F. Supp. 687, 702 (S.D.N.Y. 1993)).  A plaintiff cannot rely on generalized allegations that a defendant's purpose for the misrepresentations was to "induc[e] Plaintiff and the Class to purchase" the product at issue.  *Dash*, 27 F. Supp. 3d at 362–63 (dismissing fraud claim). As such, fraud claims fail where a commonsense interpretation of the alleged misrepresentation supports a defendant's absence of fraudulent intent.  *Grupp*, 47 F. Supp. 3d at 178-79 (dismissing a fraud claim where a "commonsense reading of the pertinent documents" would apprise DHL customers of allegedly misleading jet fuel surcharges).

Plaintiff flatly conc ludes that Defendants "intended to induce . . . Plaintiff and members of the proposed Class and Subclass to purchase Widow Jane." (Compl. ¶ 67.) This is the same sort of conclusory allegation that the court in Dash found insufficient to support a fraud claim. 27 F. Supp. 3d at 362–63. Indeed, as discussed above, a commonsense reading of the Widow Jane label, particularly after approval by the TTB, shows no fraudulent intent, but rather demonstrates an intent to honestly inform consumers about the source of the whiskey. As such, Plaintiff's fraud claim fails. *See Grupp*, 47 F. Supp. 3d at 178.

## III.    PLAINTIFF LACKS STANDING

The Complaint alleges facts showing Widow Jane did not cause Plaintiff to be deceived, which is separately fatal to his claims. *See W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP*, 5 F.3d 100, 106–07 (2d Cir. 2008) (for Article III standing, plaintiff must plead causation "in the form of a 'fairly traceable' connection between" the alleged injury and some conduct of the defendant). Plaintiff claims that he purchased some Widow Jane bourbon after reading the label. But the only labels depicted in the Complaint clearly and accurately state the source of the distillate. (Compl. ¶¶ 3, 11.) Plaintiff alleges that some third parties claim all Widow Jane bourbons are made in New York, but even if this were true, Plaintiff does not allege he saw or relied on any such claims. (Compl. ¶¶ 16–19.) According to the Complaint, Widow Jane's label did not mislead Plaintiff; to the contrary, it could only have informed him of the source of the whiskey. Plaintiff therefore lacks standing to sue Widow Jane and cannot state a claim.

Plaintiff also lacks standing to pursue injunctive relief because, as acknowledged in the complaint, Widow Jane long ago changed its labels, and plaintiff's lawyers have conceded that the current labels are not misleading in any way. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any

continuing, present adverse effects." *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (quoting

*O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)); *Deshawn E. by Charlotte E. v. Safir*, 156

F.3d 340, 344 (2d Cir. 1998). As such, Plaintiff's request for injunctive relief should also be

dismissed under Rule 12(b)(1).

## IV.    PLAINTIFF'S CLAIMS ARE MOOT

Long before he filed the Complaint, Widow Jane had changed its labels, including by

removing reference to proofing water from the Widow Jane mine. Plaintiff's lawyers admitted

this and conceded that Widow Jane's current labels, which have been on its products since 2018,

are not misleading in any way. "A case becomes moot when the issues presented are not longer

live and the parties lack a legally cognizable interest in the outcome." *New York City Employees'*

*Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992) (internal citations and quotation

marks omitted). When this occurs, Article III's case or controversy requirement is not satisfied,

and the court lacks subject matter jurisdiction over the action. *Id.* Here, Plaintiff's claims, if they

ever were legitimate (which they weren't), became moot years ago, and for this separate and

independent reason must be dismissed.

## V.    LEAVE TO AMEND SHOULD BE DENIED

When "a plaintiff inadequately pleads a claim and cannot offer additional substantive

information to cure the deficient pleading, granting leave to amend is futile and should be

denied." *Hidalgo v. v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d at 294,

298 (dismissing claims for unjust enrichment and injunctive relief with prejudice finding

amendment would be futile). "Amendment is futile if an amended complaint would fail to state

a claim on which relief could be granted." *In re Whole Foods Mkt. Grp., Inc. Overcharging*

*Litig.*, 167 F. Supp. 3d 524, 539 (S.D.N.Y. 2016). Here, the Court should deny leave to amend

because the entire theory upon which Plaintiff bases its case cannot be cured by amendment. Further, Plaintiff's lawyers' act of proceeding with their cut-and-paste claims despite knowing that Widow Jane's labels changed long ago provides an additional basis for dismissal without leave to amend.  *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007) (holding a "district court has discretion to deny leave [to amend] for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.").

## CONCLUSION

For the foregoing reasons, Widow Jane respectfully submits that the complaint should be dismissed with prejudice.

Dated: December 13, 2019

Respectfully Submitted,

BRAUNHAGEY & BORDEN LLP

By: */s/ J. Noah Hagey*
     J. Noah Hagey

BRAUNHAGEY & BORDEN LLP
7 Times Square, 27th Floor
New York, NY 10036
Tel. & Fax: (646) 829-9403

Attorneys for Defendant
Widow Jane Distilleries LLC

19